In re Evelyn F. HAINES, Debtor.

Evelyn F. HAINES, Plaintiff,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant,

and

James J. O'Connell, Trustee, Additional Defendant.

Bankruptcy No. 81–00013G.
Adv. No. 81–0043G.

United States Bankruptcy Court, E. D. Pennsylvania.

May 7, 1981.

David Paul Daniels, Camden, N. J., for debtor/plaintiff, Evelyn F. Haines.

Margaret Mary King, Philadelphia, Pa., for defendant, General Motors Acceptance Corp.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether we should grant the debtor's request for a turnover of an automobile owned by her and repossessed prior to the filing of a petition by the debtor under the Bankruptcy Code ("the Code") by a creditor having a lien on that automobile or whether we should instead grant that creditor's request for relief from the automatic stay provisions of § 362(a) of the Code to permit it to proceed with the sale of that automobile. We conclude that while the debtor is not entitled to a turnover of the automobile that we will grant the creditor's request for relief from the stay to permit it to sell that automobile.

The facts of the instant case are as follows:[1] On March 22, 1980, Evelyn F. Haines ("the debtor") purchased a 1980 Chevrolet Camaro 228 sports car from Reedman Chevrolet, Inc. ("Reedman") pursuant to an installment sales contract calling for 48 payments of $207.65 per month. Under that contract Reedman retained a lien on the automobile which it subsequently assigned to General Motors Acceptance Corporation ("GMAC") which perfected its interest by recording its encumbrance with the Pennsylvania Department of Transportation.

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

Beginning in August, 1980, the debtor failed to make the monthly payments due under the above contract whereupon, on December 5, 1980, GMAC repossessed the automobile and, on December 8, 1980, sent notice to the debtor that it was holding the vehicle and that it would be sold on January 3, 1981, unless the debtor redeemed the automobile prior to that date by paying $7,944.90 (the amount due on the contract minus the unaccrued finance charges). On December 30, 1980, GMAC sent a second notice to the debtor changing the sale date and redemption date to January 10, 1981.

On January 2, 1981, the debtor filed a petition for an adjustment of her debts under chapter 13 of the Code and, on January 14, 1981, filed a complaint against GMAC requesting a turnover of the automobile. GMAC filed an answer and a counterclaim requesting relief from the automatic stay provisions of § 362(a) to permit it to proceed with the sale of the debtor's automobile.

At the trial GMAC argued that (1) according to Pennsylvania law the debtor had lost all rights and interest in the automobile prior to the date on which she filed her petition; (2) even if the debtor retained some right or interest in the automobile that right was only the limited one of redeeming the automobile at the redemption price set forth in the notice sent to the debtor by GMAC (i. e., $7,944.90), and (3) even if the debtor did retain some other interest in the automobile GMAC was entitled to relief from the stay because its interest was not adequately protected and because there was no equity in the automobile and it was not necessary for the success of the debtor's chapter 13 plan.

With respect to its first argument, GMAC refers us to the Pennsylvania Motor Vehicle Sales Finance Act, § 626A of which provides:

A. When the repossessed motor vehicle under an installment sale contract is not redeemed by the buyer either by termination or reinstatement of the contract within the fifteen (15) day notice of redemption period, the buyer shall forfeit all claim to such motor vehicle and collateral security.

Pa.Stat.Ann. tit. 69, § 626A (Purdon 1965). GMAC consequently argues that under that section the debtor lost all rights to the automobile on December 23, 1980, fifteen days after GMAC sent the notice of redemption to the debtor.

The debtor contends however, that GMAC sent her two notices (one on December 8 and one on December 30) both of which stated that she had the right to redeem her automobile up until the date of the sale of that automobile which was scheduled for January 3 and, later, for January 10, 1981. Therefore, the debtor maintains that GMAC may not now assert that the debtor's rights were terminated on December 23, 1980.

We agree with the debtor's contention and conclude that by its action of notifying the debtor that she had the right to redeem until January 10, 1981, GMAC is precluded from asserting that the debtor lost all interest in the automobile prior to the filing of her petition under chapter 13 under either an equitable estoppel or a waiver theory. Equitable estoppel "is essentially a flexible doctrine, to be applied or denied as equities between parties preponderate . . . where one party has relied to his detriment on some action or inaction of the other party." *In re Reading Company,* 404 F.Supp. 1249 (E.D.Pa.1975) (cites omitted). *See also, Thiokol Chemical Corporation v. Burlington Industries, Inc.,* 313 F.Supp. 253 (D.Dela.1970). In the instant case we find that the debtor relied to her detriment on the notice sent by GMAC by failing either to redeem the automobile or to seek the protection of the Code within the fifteen day redemption period provided by Pennsylvania law. Consequently, we conclude that GMAC is estopped from asserting that the debtor's rights were terminated under that law.

Alternatively, we conclude that GMAC has waived its right to rely on the fifteen day redemption period under Pennsylvania law by stating in its notice to the

debtor that the debtor had until January 10, 1981 to redeem her vehicle. Waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *See also, Barker v. Wingo*, 407 U.S. 514, 525, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972); *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). We conclude that GMAC intentionally waived its right to assert that the debtor lost all rights to the automobile after the fifteen day period by the two notices it sent to the debtor. We, therefore, hold that as of the date that the debtor filed her petition under chapter 13 of the Code the debtor still retained some interest in the automobile. The question thus becomes what was the extent of the debtor's interest in the automobile on the date of her filing.

GMAC asserts that under Pennsylvania law the only interest which the debtor had at that time was the right to redeem the automobile by the payment in full of the redemption amount of $7,944.90. The debtor argues, however, that under the provisions of the Code she has the right to pay the claim of GMAC over the life of her chapter 13 plan. We conclude that GMAC's assertion is correct. Pennsylvania law clearly provides that once an automobile has been repossessed the title holder has only two options: to treat the sales contract as terminated, in which case the title holder cannot recover the automobile or pay in full

the redemption value (as defined in that statute) of the automobile.[2] The debtor asserts, however, that under the provisions of the Code she does not have to pay the redemption value in full immediately but may pay it over the life of her plan.[3] Furthermore, the debtor asserts, the amount due GMAC as an allowed secured claim is limited to the fair market value of the automobile with the balance due being a general unsecured claim.[4] Lastly, the debtor asserts that under § 1322(b)(2) she may modify the rights of GMAC since GMAC's security interest is not in the debtor's residence as provided by § 1322(b)(2).[5]

■ We do not agree with the debtor's application of the above provisions of the Code to the instant case because here GMAC has more than a security interest in the automobile, it has possession of the automobile with the right to resell it. Further, by repossessing the automobile GMAC has cut off all rights of the debtor therein save the right to redeem. We agree with GMAC's assertion that nothing in the Code expands the interest which the debtor had in the automobile at the time of the filing of her petition. That interest was at that time limited to the right to redeem. Consequently, we conclude that the debtor is not entitled to an order directing GMAC to turn over the automobile unless and until the debtor tenders payment of the redemption value ($7,944.90).[6]

---

**2.** *See* Pa.Stat.Ann. tit. 69, § 625(B)(2) (Purdon 1965). The debtor has not asserted that the redemption value given by GMAC ($7,944.90) is incorrectly calculated under that section.

**3.** *See* 11 U.S.C. §§ 1301 *et seq.*

**4.** Section 506(a) of the Code states:
   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be de-

termined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
   11 U.S.C. § 506(a).

**5.** Section 1322(b)(2) provides:
   (b) Subject to subsections (a) and (c) of this section, the plan may—
   (a) modify the rights of holders of secured claims other than a claim secured only by a security interest in real estate property that is the debtor's principal residence, or of holders of unsecured claims.

**6.** Further, the debtor's right to redeem the automobile is not indefinitely extended by the Code. In this respect, see § 108(b) which provides:

With respect to GMAC's request for relief from the automatic stay to permit it to sell the automobile we conclude that GMAC is entitled to that relief. Section 362(d) contains the appropriate standards for granting such relief:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). At the trial held herein, GMAC established that the debtor lacked equity in the automobile because the debt owed GMAC is $7,944.90 while the fair market value is at the most $7,650.[7] Furthermore, the debtor failed to establish that the automobile was necessary for the success of the debtor's chapter 13 plan.[8] While the debtor testified on direct examination that she needed the automobile, on cross-examination she admitted that she had been able to travel to and from work by alternative means of transportation during the several months since her automobile was repossessed. While the debtor has stated in her brief that American society is built on the private ownership of the automobile, we find that it is not impossible for an individual to survive in an urban area without an automobile—as established by the debtor's own testimony in this case.[9] As stated by the court in In re Dallasta, 7 B.R. 883 (Bkrtcy.E.D.Pa.1980), hardship to the debtor alone is not a reason to deny relief from the stay where the creditor has otherwise established its right to that relief. We conclude, therefore, that GMAC is entitled to relief from the automatic stay pursuant to § 362(d)(2).

---

(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 60 days after the order for relief.

11 U.S.C. § 108(b).

7. The evidence presented by GMAC was that $7,650 is the retail value of the automobile. The debtor, apparently in an attempt to reduce the allowed secured claim of GMAC under § 506(a), see note supra, offered evidence that the wholesale or trade-in value of the automobile was $6,500.

8. Section 362(g) allocates the burden of proof in a complaint for relief from the stay thus:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

9. We might have been more convinced by the debtor's argument on this point had she been seeking to retain an economical or more practical automobile than the expensive sports car here involved.