**In re Kevin Lynn GUNDER, Andrea Arlene Gunder, Debtors.**

**Bankruptcy No. 2–80–02479.**

United States Bankruptcy Court, S. D. Ohio, E. D.

Dec. 31, 1980.

Mitchel D. Cohen, Columbus, Ohio, for debtors.

Roland T. Gilbert, Columbus, Ohio, for BancOhio Nat. Bank.

Frank Pees, Worthington, Ohio, trustee.

## ORDER ON MOTION

R. J. SIDMAN, Bankruptcy Judge.

## TO RECOVER REPOSSESSED AUTOMOBILE

This matter is before the Court on the merits of a Motion to Recover Repossessed Automobile filed by the debtors. The matter was tried to the Court on its merits and was submitted for decision.

The debtors have a Chapter 13 proceeding pending before this Court. The terms of their plan, as proposed, include payment of $44.00 per week to the Chapter 13 trustee for a period of approximately forty-eight (48) months, payment of administrative expenses and priority claims in full, payment of secured claims in full to the value of their security as determined by the Court, and a dividend of 100% to all allowed unsecured claims. The debtors filed their petition on July 14, 1980 and listed BancOhio National Bank (BancOhio) as a creditor secured in a 1978 Plymouth Horizon which had been repossessed before the filing. BancOhio filed its proof of claim on August 22, 1980, attaching a certificate of title to the 1978 Plymouth Horizon which reflected John Gunder, the father of the debtor Kevin Gunder, as the owner of the vehicle. BancOhio filed its claim as unsecured.

The present motion under consideration is the attempt of the debtors to assert an interest in the 1978 Plymouth

sufficient to cause its return to their possession for use in executing the terms of their proposed plan. A threshold question to be addressed by the Court concerns the objection raised by BancOhio to the introduction of any evidence tending to dispute the ownership of the car except as reflected on the title. Section 4505.04 of the Ohio Revised Code provides:

"No person acquiring a motor vehicle from the owner thereof, whether such owner is manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim, or interest in or to said motor vehicle until such person has had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for it.... No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with sections 4505.-01 to 4505.19, inclusive, of the Revised Code.

(B) By admission in the pleadings or stipulation of the parties." § 4505.04, O.R.C.

This statute sets out a conclusive presumption of ownership based upon a notation on the face of the certificate of title to the automobile. See, *The Kelley Kar Co. v. Finkler*, 155 Ohio St. 541, 99 N.E.2d 665 (1951). To the extent 4505.04 O.R.C. states a rule of evidence or sets forth a matter of procedure, this statute has no effect in a federal bankruptcy court. Rules 101 and 1101(a) & (b) of the Federal Rules of Evidence, Rule 13–1 of the Rules of Bankruptcy Procedure, and § 405(d) of the Bankruptcy Reform Act of 1978 (P.L. 95–598). It has been said, however, that a conclusive presumption is not merely a rule of evidence or a procedural guide, but rather that, in effect, it is a rule of substantive law. 21 *O.Jur.*2d Evidence § 101, *McCormick on Evidence* § 342 (E. Cleary ed., 2d edit. 1972). In the area of bankruptcy law,

the United States Constitution has expressly granted power to the federal government to make uniform laws regarding bankruptcy. *U.S.Const.* Art. I, § 8, cl. 4. In such an area, where power has expressly been granted to the federal government, any state statute which conflicts with that federal law will have to yield to the federal rule of law. *U.S.Const.* Art. 6. A state has no power to make or enforce any law which conflicts with the federal bankruptcy laws. *International Shoe Company v. Pinkus,* 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929). Furthermore, decisions of state courts defining property rights do not bind the federal bankruptcy courts when those decisions are contrary to the policy and proper construction of the bankruptcy laws. *Board of Trade of the City of Chicago v. Johnson (In Re Henderson),* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1923). The policy of the Bankruptcy Code, as reflected in 11 U.S.C. § 541, is to provide for an estate consisting of all legal and equitable property interests of the debtors. Section 4505.04 of the Ohio Revised Code cannot be applied in this proceeding to the extent that it purports to deny to the bankruptcy court the right to hear evidence pertaining to any interest which the debtors may have in the 1978 Plymouth. A clear intent of the Bankruptcy Reform Act of 1978 was to minimize, if not eliminate, the vagaries of state law upon the administration and application of the bankruptcy law. With the recognition of certain limited areas of exception (for example, the matter of exemptions under § 523), this intent should be implemented by a restrained deference to state law on matters raised in a bankruptcy case. In the present case, this Court holds that the state statute (§ 4504.04, O.R.C.) on the presumption of ownership will not be applied.

■ Section 541 of the Bankruptcy Reform Act of 1978 (11 U.S.C. § 541) has eliminated the concept of title as it relates to the inclusion of property as property of the estate. See 4 *Collier on Bankruptcy* § 541.02 (15th ed. 1980). All legal and equitable interests in property are included. Moreover, federal law will determine what property becomes property of the estate. State law, to the extent it does not conflict with the policy or spirit of the bankruptcy laws, will then be used to determine the type or extent of the interest which the debtor possesses. Property of the estate is generously defined under federal law and does not exclude novel interests. *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (construing § 70a of the Bankruptcy Act of 1898, the predecessor in part to 11 U.S.C. § 541). Important recognition is often given to interests which are not necessarily considered relevant in state law allocation of title. *R. C. A. Corp. v. Altschul (In the Matter of Spanish Language Television of Arizona Inc.),* 456 F.2d 159 (9th Cir., 1972).

■ This Court finds that the 1978 Plymouth automobile is property of the debtors' estate. Although the interest of the debtors in the vehicle is not a legal interest under applicable state law, a literal interpretation of that state law is not appropriate where certain intervening events have occurred. Other courts, when faced with intervening situations, have recognized equitable rights in persons not shown on the certificate of title. *In the Matter of Lee, Inc.,* 129 F.Supp. 920 (N.D.Ohio, 1955) and *U. S. v. Birns,* 395 F.2d 943 (6th Cir., 1968).

This Court, therefore, concludes that Kevin and Andrea Gunder have an equitable interest in the 1978 Plymouth which subjects the disposition of the vehicle to the jurisdiction of the bankruptcy court. The Court notes that it was established by uncontested testimony at the hearing on this matter that the car had been placed in Kevin Gunder's father's name so that a fleet discount price and fleet insurance could be obtained by John Gunder as part of an insurance package covering other vehicles which he owns. The cost to the debtors was thus lower than the debtors, as minors, could obtain were the car titled in their names. Kevin Gunder then testified that his father had co-signed with him and his wife on the note to BancOhio, but that inquiries and notices from the bank had always been sent to Kevin Gunder (at least

one demand letter, however, was also sent to John Gunder). Furthermore, the payment book issued by BancOhio was in the name of Kevin and Andrea Gunder, and no payments had ever been made directly by John Gunder.

Having concluded that Kevin and Andrea Gunder have an equitable interest in the 1978 Plymouth, the Court must next determine the nature and extent of that interest under state law. Ohio Revised Code § 1309.49 states in relevant part:

"§ 1309.49 (UCC 9–506) Debtor's right to redeem collateral.

"At any time before the secured party has disposed of collateral . . ., the debtor or any other secured party may, unless otherwise agreed to in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding, and preparing the collateral for disposition, in arranging for the sale."

Based upon O.R.C. § 1309.49, the interest which remained in the Gunders (as debtors under the state statute) at the time of the filing of their Chapter 13 petition is a right to redeem the automobile by tendering fulfillment of all obligations secured by the collateral plus any reasonable expenses incurred by the bank in the repossession and storage of the car. "Tendering fulfillment" of all obligations can be interpreted as requiring an offer of payment of all obligations due and performance of all obligations which are matured. See Official Comment to O.R.C. § 1309.49. The question then becomes what obligations are due.

The agreement between the bank and the Gunders also includes an acceleration agreement which serves to make the entire obligation due upon any default. This Court has previously held that 11 U.S.C. § 1322(b)(3) serves to negate the effect of acceleration clauses and enables debtors to provide for curing defaults within their plan. See *In Re Soderlund*, 7 B.R. 44 (Bkrtcy.S.D.Ohio, 1980) (unreported). Further, the tender of any past due payments on the note for the automobile, exclusive of the acceleration of the entire debt, is not necessary before the debtor has right to possession of the car in the context of this proceeding. Before the debtors can invoke the provisions of 11 U.S.C. § 1322(b)(3), they must first demonstrate the ability and propose the means by which the payments on the car which were past due at the time the Chapter 13 petition was filed and any reasonable pre-petition expenses incurred by the bank in the repossession are to be paid.

The state statute (§ 1309.49, O.R.C.) gives the debtor the substantive right to redeem. The federal statute [§ 1322(b)(3)] then states in broad terms that the debtor may make a proposal for the curing of a default. That proposal is not limited, in this Court's view, to "tendering fulfillment" as defined under state law, but rather is only limited by the proper treatment of the secured claim under the confirmation standards delineated in § 1325(a)(5)(B) of the Bankruptcy Code. 5 *Collier on Bankruptcy* (15th Ed.) § 1322.01[c](ii), p. 1322–10. Clearly, if the debtor could have "tendered fulfillment" under state law he probably would have found no need to invoke the jurisdiction of this Court. The benefits of a Chapter 13 proceeding include the ability of a debtor to cure, in a manner consistent both with adequate protection of the creditor and with the financial ability of the debtor, pre-petition default.

The ability of these debtors to invoke the jurisdiction of this Court to obtain a return of the repossessed automobile (given the previous finding that the automobile is property of the debtor (or estate) as defined in the Bankruptcy Code) is further buttressed by § 543 of the Code which provides:

"(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of property of the debtor, proceeds of such property, or property of the estate, in the possession, custody, or control of such custodian, ex-

cept such action as is necessary to preserve such property.

"(b) A custodian shall—

(1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds of such property, that, at any time, came into the possession, custody, or control of such custodian." 11 U.S.C. § 543(a) and (b).

A custodian is defined in the Code to mean a

". . . trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property." 11 U.S.C. § 101(10)(C).

A secured creditor holding property repossessed from a debtor under authority granted in a security agreement appears clearly covered under the definition of a custodian. See *ABD Federal Credit Union v. Williams (In Re Williams)*, No. 80–0271 (E.D.Mich., October 21, 1980) (Patton, B. J.—unreported).

The inclusion of the 1978 Plymouth as property of the estate, and the concomitant recognition of the equitable interest possessed by the debtors in this proceeding, also make the assertion of any interest in the vehicle by the creditor, BancOhio, subject to the provisions of 11 U.S.C. § 362. See 11 U.S.C. § 362(a)(3) and (a)(5). Relief from the provisions of § 362 is therefore governed by § 362(d)(1), applicable in Chapter 13 proceedings pursuant to 11 U.S.C. § 1303, which conditions the debtors' retention and use of secured collateral upon the provision of adequate protection to the creditor. The Court finds that the currently proposed Chapter 13 plan is deficient in failing to set out adequate protection for BancOhio, a creditor secured in property which the debtors wish to redeem, retain, and use. Without such protection the debt-

ors cannot recover the car and without the car, confirmation of the Chapter 13 plan must be denied as unfeasible.

With these findings, the Motion to Recover Repossessed Automobile and confirmation of the Chapter 13 plan proposed by the debtors are denied. This denial shall be without prejudice to the resubmission of an amended plan within (10) days from the date of this order which may provide the adequate protection necessary to the redemption of the 1978 Plymouth and execution of the plan.

IT IS SO ORDERED.